BIDDLES, INC., et al., Appellants, v. RICHARD E. ENRIGHT, as Police Commissioner of the City of New York, Respondent.

**Constitutional law — New York city — auction sales — provision of charter of city of New York, in so far as it prohibits auction sales of jewelry and similar merchandise at night, constitutional — equity — when police officials may be enjoined from enforcing unconstitutional law or ordinance.**

1. Section 1991 of the Consolidation Act (L. 1882, ch. 410, amd. L. 1918, ch. 179), made applicable to the city of New York by section 1610 of its present charter (L. 1901, ch. 466), in so far as it prohibits sales of jewelry and similar merchandise in the night time by public auction, is not so arbitrary, such an unlawful interference with business, as to be unconstitutional. It is a reasonable effort to insure fair public sales, to prevent fraud and deception and to protect purchasers from the dangers lurking in the darkness of the night. Furthermore the business of an auctioneer has always been affected with a public interest and subject to legislative restriction (General Business Law, art. 3).

2. A contention that the legislation is not aimed at the auctioneer but at the merchant and unlawfully prevents him from selling his goods at public auction is unsound. There is no distinction. All restrictions upon auctioneers are, in effect, a restriction upon merchants desiring to sell their goods at public auction. They cannot sell them at auction except through the licensed auctioneer. In this respect their rights of sale are restricted. In the same way and to the same effect is the restriction as to night auctions. It affects both the auctioneer and the merchant. It could not relate to one and not to the other.

3. A claim that certain exceptions in the act are so arbitrary and unreasonable as to render the whole act unconstitutional cannot be sustained. The reasons by which the act may be upheld as constitutional do not apply to the class included in the exceptions, as to which deception and theft will be no more likely at night than in the daytime.

4. The action for an injunction to restrain the defendant from enforcing the statute was maintainable in equity. As a general proposition equity will not restrain police officers from enforcing the law. There are, however, numerous instances where a statute or

an ordinance of a criminal nature is such an unlawful interference with the rights of property that courts of equity will restrain its enforcement in order to prevent irreparable damage. Equitable jurisdiction exists to restrain criminal prosecutions under unconstitutional enactments, when the prevention of such prosecutions is essential to the safeguarding of rights of property. (*People* v. *Gibbs,* 186 Mich. 127; *Hayes* v. *City of Appleton,* 24 Wis. 542, disapproved.)

*Biddles, Inc.,* v. *Enright,* 208 App. Div. 790, affirmed.

(Argued December 2, 1924; decided January 21, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 22, 1924, which affirmed a judgment in favor of defendant entered upon an order of Special Term granting a motion by defendant for a dismissal of the complaint.

*Samuel Seabury* and *Abraham Brill* for appellants. A statute enacted under the police power is valid only if there exist the conditions justifying an exercise of the police power, to wit, a necessity of protecting the public health, the public morals or the public welfare. The moment such necessity ceases, the statute becomes invalid and it is for the court to determine when the necessity has passed. The statute now under consideration was a reasonable exercise of the police power under the social and industrial conditions which existed when it was originally enacted in 1773. These conditions, however, no longer prevail and hence the statute is now unconstitutional. (*Municipal Gas Co.* v. *P. S. Comm.,* 225 N. Y. 89; *Perrin* v. *United States,* 232 U. S. 478; *Johnson* v. *Gearlds,* 234 U. S. 422; *Ives* v. *South Buffalo Ry. Co.,* 201 N. Y. 271; *Matter of Ryers,* 72 N. Y. 1; *Matter of Jacobs,* 98 N. Y. 98; *Buffalo* v. *Marion,* 13 Misc. Rep. 639; *Robinson* v. *Wood,* 119 Misc. Rep. 299; *Hayes* v. *City of Appleton,* 24 Wis. 542; *People* v. *Gibbs,* 186 Mich. 127.) Plaintiffs do not question the right of the Legislature to regulate the activities of auctioneers.

The statute now under consideration, however, affects not only auctioneers but every person engaged in New York city in any business other than those excepted by the statute. It prohibits such a person from selling his goods at auction in New York city after sundown, although it does not prohibit the sale of the same merchandise in New York city at retail or at wholesale after sundown, nor does it prohibit the sale by auction in New York city after sundown of merchandise in the excepted classes. In these circumstances, the statute makes an illegal discrimination and is, therefore, unconstitutional. (*Robinson* v. *Wood,* 119 Misc. Rep. 299; *People ex rel. Moskowitz* v. *Jenkins,* 202 N. Y. 53; *People* v. *Gillson,* 109 N. Y. 389.)

*George P. Nicholson,* Corporation Counsel (*John F. O'Brien, Charles J. Druhan* and *Russell Lord Tarbox* of counsel), for respondent. A court of equity will not intervene to prevent the enforcement of this criminal statute. (*Matter of Sawyer,* 124 U. S. 200; *People* v. *Canal Board,* 55 N. Y. 390; *Davis* v. *Am. Soc.,* 75 N. Y. 362; *Delaney* v. *Flood,* 183 N. Y. 323; *Coykendall* v. *Hood,* 36 App. Div. 558; *Eden Musee American Co.* v. *Bingham,* 125 App. Div. 780; *Lee* v. *O'Malley,* 140 App. Div. 595; *Buffalo Gravel Corp.* v. *Moore,* 201 App. Div. 242; 234 N. Y. 542.) The business of an auctioneer, being affected with a public interest and embracing peculiar opportunities for fraud and other species of crime, has always been the subject of careful restriction. (*People ex rel. Schwab* v. *Grant,* 126 N. Y. 473; Gen. Business Law, art. 3; L. 1774, ch. 4; L. 1817, ch. 275; L. 1853, ch. 138, § 3; Consol. Act [L. 1882, ch. 410], §§ 113, 1983–1997; Greater N. Y. Charter [L. 1897, ch. 378; L. 1901, ch. 466], §§ 34, 316; *Viadero* v. *Stacom,* 14 Daly, 345; *City of Buffalo* v. *Marion,* 13 Misc. Rep. 639; *United Auctioneers* v. *Scully,* 23 Misc. Rep. 732; *Crabtree* v. *Scully,* 24 Misc. 413.) The long-continued existence and the frequent re-enact-

ment of statutes similar to chapter 179 of the Laws of 1918, without question by the courts, give rise to a presumption of constitutionality. (*People ex rel. Einsfeld v. Murray*, 149 N. Y. 367.) Chapter 179 of the Laws of 1918 is a valid exercise of the police power for the prevention of fraud and theft. (*People ex rel. Nechamcus v. Warden*, 144 N. Y. 529; *People v. Havnor*, 149 N. Y. 195; *Ives v. S. Buffalo Ry. Co.*, 201 N. Y. 301; *People ex rel. Knoblauch v. Warden*, 216 N. Y. 154; *Fougera v. City of New York*, 224 N. Y. 269; *Lincoln Trust Co. v. Williams Bldg. Corp.*, 229 N. Y. 313; *Housing Law Cases*, 230 N. Y. 429; *People v. Weller*, 237 N. Y. 316; *Munn v. Illinois*, 94 U. S. 113; *Barbier v. Connolly*, 113 U. S. 27; *Soon Hing v. Crowley*, 113 U. S. 703; *Safee v. City of Buffalo*, 204 App. Div. 561; *City of Buffalo v. Schliefer*, 2 Misc. Rep. 216.) Chapter 179 of the Laws of 1918 is not unreasonably discriminatory as to persons and locality. (*People v. Havnor*, 149 N. Y. 195; *Barbier v. Connolly*, 113 U. S. 27; *Soon Hing v. Crowley*, 113 U. S. 703.) Chapter 179 of the Laws of 1918 is not unreasonably discriminatory as to classes of merchandise. (*Budd v. New York*, 143 U. S. 517; *Warren v. Geer*, 117 Penn. St. 207; *Hays v. Comm.*, 107 Ky. 655; *State v. Webber*, 214 Mo. 272; *People v. Smith*, 147 Mich. 391; *State v. Montgomery*, 92 Me. 433.)

*Edward S. Greenbaum* for the Jewelers Vigilance Committee, Inc., et al., *amici curiæ*. A statute prohibiting the sale of jewelry by auction after sundown is even more necessary in 1924 than it was in 1773. (*City of Rochester v. Close*, 35 Hun, 208; *State v. Wright*, 21 L. R. A. [N. S.] 349.) The courts recognize the fact that the auction sale of jewelry is a proper subject for regulation and have upheld the constitutionality of laws forbidding the auction sale of jewelry at night. (*Hyman v. Boldrick*, 153 Ky. 27; *City of Buffalo v. Marion*, 13 Misc. Rep. 639; *City of Roanoke v. Fisher*, 119 S. E. Rep. 259; *Maercker v. Milwaukee*, 151 Wis. 324; *Mogul v. Gaither*, 121 Atl.

Rep. 32; *Boccus* v. *Louisiana*, 232 U. S. 334; *State* v. *Bates*, 101 Minn. 301; *Clein & Ellman* v. *City of Atlanta*, 124 S. E. Rep. 882.)

CRANE, J. Section 1991 of the Consolidation Act (Laws of 1882, chap. 410), as amended by chapter 179 of the Laws of 1918, is made applicable to the city of New York by section 1610 of the present Greater New York charter. It relates to sales by public auction, and its provisions are as follows:

" Sec. 1991. All sales of goods by public auction in the city of New York, by an auctioneer, shall be made in the daytime, between sunrise and sunset, excepting:

" 1. Books and prints.

" 2. Goods sold in the original package, as imported, according to a printed catalogue, of which samples shall have been opened and exposed to public inspection at least one day previous to the sale.

" 3. Horses and live stock.

" 4. Fruit and other farm products.

" 5. Paintings, statuary, bronzes and other works of arts and specimens of natural history, which shall have been on public exhibition in the city of New York for at least one day immediately preceding the time of sale, provided that public notice of the time and place of such exhibition shall have been given by advertisement for at least one day immediately preceding the day of such exhibition, in one or more of the daily newspapers printed in said city, and designated as hereinafter prescribed. All such sales shall be conducted under a special permit of the mayor of said city, who is hereby authorized to grant such special permits in his discretion, and upon such reasonable conditions as he may prescribe. The mayor of the city shall, from time to time, by a notice to be filed in his office and printed for five consecutive days in the City Record, designate the newspapers in which the advertisements hereinafter provided for may be

printed, and the mayor may at any time, by a like notice, revoke the designation of any such newspaper. Every auctioneer who shall violate the provisions of this section shall be deemed guilty of a misdemeanor."

Biddles, Inc., one of the plaintiffs, is a domestic corporation and the owner of a jewelry store located at No. 111 West Forty-second street in the city of New York.

Irving Brill, the other plaintiff, is a duly licensed auctioneer of the city of New York authorized by law to conduct auction sales.

The complaint in this action alleges that Biddles, Inc., has in the said jewelry store a stock of merchandise (jewelry) which it is desirous of selling in the night time at public auction to the highest bidder through the auctioneer Irving Brill; that by reason of the above statute the said Brill cannot conduct such a sale without violating the law and subjecting himself to arrest by the defendant, the police commissioner of the city of New York, and that the defendant has notified the plaintiffs that he will enforce the statute, which, say the plaintiffs, will result in irreparable damage and loss for which they have no adequate remedy at law. They, therefore, pray an injunction, pleading that the statute is unconstitutional.

At the time the plaintiffs moved upon the complaint and affidavits for a temporary injunction pending the trial of the action, the defendant also moved for judgment on the pleading on the ground that the complaint did not state a cause of action. The defendant's motion was granted and the judgment dismissing the complaint was unanimously affirmed by the Appellate Division. The appeal comes here upon the constitutional question.

The appellants claim that the statute is not within the police power; that it in no way affects or relates to a condition threatening the public health, morals or welfare especially as the reasons for its original enactment have long since passed away.

This law, in substance, has been upon the statute books in one form or another for over one hundred and fifty years. The first act relating to auction sales was passed by the Colonial Assembly, March 8, 1773, and as it is the groundwork of the appellants' argument, it is necessary to quote it at length. (Chapter 1615.)

"An Act to prevent the Sale of Goods at Night by Vendue Auction or Outcry in the City of New York.

"Whereas a Practice of Selling Goods by Auction at Night, when their Qualities cannot be accurately distinguished, has obtained in the City of New York, whereby the unwary have been frequently imposed upon, and great Frauds committed, for prevention whereof,

"Be It Enacted by his Excellency the Governor the Council and the General Assembly, and it is hereby enacted by the Authority of the same, That from and after the passing of this Act if any Person or Persons shall be convicted of selling or putting up for Sale within the said City, any Goods Wares or Merchandizes or any other Article or Thing whatsoever by way of Vendue Auction or Outcry at any Time after Sunset, such person or Persons so offending contrary to the true Intent and meaning of this Act shall forfeit and pay for every such Offence the Sum of five Pounds to be recovered by Action of Debt before any one of his Majesty's Justices of the Peace in the said City and County, who is hereby required to hear and determine the same in a summary way: one half of which Forfeiture shall be to the use of the person suing for the same, and the other half to be applied for the Benefit of the Poor of the said City or County."

The reason for this enactment is stated in the preamble. The practice of selling goods by auction at night, when their qualities could not be accurately distinguished had frequently resulted in the unwary being imposed upon, and great frauds committed. Therefore, auctions were to be held before sunset, that is, in the day time.

As before stated, the appellants hang their argument upon this preamble. They say that in 1773 the only artificial light was the candle or oil lanterns (they might have added the torch); that these were insufficient to enable purchasers to see clearly and distinctly what they were buying; and further, that these artificial lights were very conducive to fire. Their argument continues. As we now have the electric light and sufficient fire protection in the city of New York, these reasons no longer apply, and, therefore, the purpose of this statute has long since vanished. Counsel seems to think that the reason assigned for the original passage of this act must be adhered to throughout the century, and that no other reasons or conditions, however good and sufficient to make it constitutional, will suffice, as they have not been stated by subsequent enactments. In other words, as the Colonial Assembly gave its reason for the passage of the original act of 1773, all subsequent acts of like nature must stand or fall according to the same reason based upon the same conditions. This is too narrow a view to take of this legislation. Counsel has somewhat confused reasons and conditions. Physical conditions may change, but the new conditions may make such an act all the more necessary for the protection of the public from fraud and hidden danger. New conditions may sustain the same reason, or, to be more accurate, reasoning from new conditions and new premises may bring us to the same result.

Courts should be very slow in declaring legislation which has been frequently re-enacted during the course of a century unconstitutional, where conditions may exist which make such a statute reasonably necessary for the public welfare. As was said by this court in *People* v. *Beakes Dairy Co.* (222 N. Y. 416, 426): " To hold a statute unconstitutional is a grave thing to do. To refuse, by so doing, to recognize a demonstrated evil and to characterize the unusual in legislation as impossible is unwise.

Constitutional law is ' to a certain extent, a progressive science.' "

With modifications the Revised Statutes of 1829 embodied this law (1 R. S. chap. 17, title 1, sect. 38); it was continued by section 1991 of the Consolidation Act (Laws of 1882, chap. 410). This section of the act was amended by chapter 10 of the Laws of 1888, chapter 289 of the Laws of 1893, chapter 534 of the Laws of 1894, and continued by section 1610 of the Greater New York charter, the last amendment being that first above given, chapter 179 of the Laws of 1918. During various periods, therefore, in the hundred years, the Legislature of the State of New York has had occasion to consider the re-enactment or the amendment of this auction sales law. We must assume that there have been conditions and reasons which called the matter to the attention of these various Legislatures and that the enactment of the laws was an attempt to meet present-day conditions and not a mere continuance through ignorance or mistake of dead legislation.

We are, therefore, called upon to examine the matter anew and to determine for ourselves whether there may be such a condition of affairs in New York city pertaining to public auctions at night as to make such legislation reasonable, and not wholly unwarranted.

In the first place, to say that because the candle and the lamp light have been succeeded by the electric light, deception and fraud cannot be perpetrated, as customers may readily examine all articles by present day artificial light, may not be true to fact. With the improvements in science and in manufacture, imitation jewelry and precious stones are much more like the real article than ever before. To detect the imitation is now much more difficult. In the examination of jewelry and precious stones, silks, fabrics, and the like, too much artificial light, or the nature of the artificial light, may be as deceiving as the candle or the lamp. The glare

may be as obscuring as the darkness. Colors too, as we well know, may take on a different shade altogether, according to the quality or coloring of the light. Manipulations of the lights upon the stage have made it common knowledge that the eye may be readily mistaken as to the actual nature of the thing observed. Without any actual intent to defraud, purchasers may be deceived as to the nature and quality of the article they are buying where there is no opportunity to examine it by daylight. The many kinds of light now in use together with the degree of brilliancy may make it much easier for a purchaser to be deceived, than by the use of candle or lamp, where the dimness at least was to be anticipated. " It is not enough to say that the business may be honestly conducted. The State may, to some extent, compel honesty by imposing a license fee if widespread frauds upon and losses by its people are thereby prevented. Any trade, calling or occupation may be reasonably regulated if ' the general nature of the business is such that unless regulated many persons may be exposed to misfortunes against which the Legislature can properly protect them.' " (*People* v. *Beakes Dairy Co.*, *supra*, p. 427.)

Another very good reason why the Legislature might be justified in passing such an act is the prevention of the gathering of a crowd at night in or about the streets of New York, where jewelry and precious articles are being sold. Surely we are having trouble enough in this day with thugs, robbers and holdups. No one who is familiar with our court records, or the issues of the daily press, but is familiar with the fact that murders are too frequently committed for the sole purpose of robbery or theft, and that pedestrians are frequently waylaid in the streets of the city of New York and their valuables taken. This condition has called for comment in many quarters, and is well known to every judge holding the criminal courts or reviewing criminal cases. The legislators might have had before them these facts,

and could reasonably have supposed the following: A public auction at night is being held in the plaintiffs' store on Forty-second street. In the complaint it is stated that 111 West Forty-second street is between Sixth and Seventh avenues, one of the busiest thoroughfares in the city of New York. Who gathers around the auctioneer as the sale is being conducted at night? Anybody and everybody who desires to walk in and mingle with the crowd, no matter who he or she may be. The honest purchaser may be standing alongside of the desperate crook. A purchaser buys an article of value, a piece of jewelry which may be readily carried away on his person. He leaves, followed by the criminal, who, in the darkness of some by-street, waylays him, perhaps murders him, for the purpose of obtaining the jewelry. To say that there is not more danger at night from the assembling of such crowds around the place where valuables are publicly distributed, than there would be in the day time, is to ignore the fact that darkness has always been sought as a cover for crime. (*Hyman* v. *Boldrick*, 153 Ky. 77.) The electric light and the lamp post have had a great civilizing effect in all great cities, and by their shining have been silent missionaries of morality; but they have yet to make the streets of a great metropolis in all places as safe as they are in the day time.

When we come, therefore, to consider this statute as it affects the plaintiffs' business of selling jewelry, we can see good reason why the Legislature in the interests of peace, safety and the protection of citizens should require that the scattering of valuables made at public auction, amidst a crowd of strangers, should be conducted in the daylight where the purchasers can retire and return to their homes or places of business with more safety than at night. Any legislation which tends to lessen the danger should be welcomed, not criticised.

We cannot say, therefore, that this act of the Legisla-

ture is so arbitrary, such an unlawful interference with the business of the plaintiffs, as to be unconstitutional. It is a reasonable effort to insure fair public sales, to prevent fraud and deception and to protect purchasers from the dangers lurking in the darkness of the night. A statute may not accomplish the purpose for which it was intended. Reasonable minds may differ as to its necessity, but where from one side of the argument it appears to be reasonable, and furnishes a fairly good opportunity to accomplish a public benefit or remove an evil, the court should not interfere with its enforcement by declaring it unconstitutional. (*People* v. *Weller*, 237 N. Y. 316–332.)

Then again, the business of an auctioneer, while perfectly legal, has always been affected with a public interest and subject to legislative restriction. (*People ex rel. Schwab* v. *Grant*, 126 N. Y. 473; Gen. Business Law, [Cons. Laws, ch. 20], art. 3.) By section 34 of the Greater New York charter, no person may carry on the business of auctioneer in the city of New York without first having obtained a license from the city clerk. Certain requisites are necessary in order to procure this license. I take it that if the Legislature may prohibit the selling of goods at public auction, except through a licensed auctioneer, or prohibit a person acting as public auctioneer, unless he first obtain a license, that it may place such restrictions upon the obtaining of the license, or such limitation upon the acts of the auctioneer as may be reasonable, that is, not wholly arbitrary. Can we say that the Legislature having the power of regulation, and having exercised it as to pawnbrokers (Penal Law, § 1592), second-hand dealers and junk dealers (Chap. 14, sect. 44, subd. 2, art. 4; and section 122, article 9, of the Ordinances of the City of N. Y.) and conferring by section 316 of the charter power upon the police of the city to supervise and inspect all junk-shop keepers, second-hand dealers and auctioneers, cannot prohibit the auctioneer from

selling jewelry and like merchandise by night auctions and that such a restriction is arbitrary and unreasonable? The courts should be very sure of their ground before declaring a regulatory measure of a licensed activity arbitrary and an unconstitutional interference with the rights of the citizen.

Counsel for the appellants apparently admits in his brief that if the legislation were intended to regulate the auctioneer, it would be legal. He claims, however, that the legislation is not aimed at the auctioneer but at the merchant and unlawfully prevents him from selling his goods at public auction. I for one cannot see the distinction. All restrictions upon auctioneers are, in effect, a restriction upon merchants desiring to sell their goods at public auction. They cannot sell them at auction except through the licensed auctioneer. (Greater N. Y. Charter, § 34.) In this respect their rights of sale are restricted. In the same way and to the same effect is the restriction as to night auctions. It affects both the auctioneer and the merchant. It could not relate to one and not the other. In fact, the act directly bears upon the auctioneer by providing in the last sentence: " Every auctioneer who shall violate the provisions of this section shall be deemed guilty of a misdemeanor."

The act quoted at the beginning of this opinion makes certain exceptions. For instance, it does not apply .to books and prints, horses, live stock, etc. The appellants claim that these exceptions are so arbitrary and unreasonable as to render the whole act unconstitutional. The reasons here given by which this act may be upheld as constitutional naturally suggest that they do not apply to the class included in the exceptions, and as to which deception and theft will be no more likely at night than in the day time. (*People* v. *Havnor,* 149 N. Y. 195–205; *Soon Hing* v. *Crowley,* 113 U. S. 703.)

The fact that the merchant next door to the plaintiff is allowed to sell his goods at private sale at night has

no relation to this point of constitutionality, as the plaintiff, jeweler, has the same right. If the neighbor attempted to sell at public auction, he would run against a like restriction as have the plaintiffs here.

The respondent makes the point that this complaint was properly dismissed, as equity will not restrain police officers from enforcing the Penal Law. This as a general proposition is true. (*Buffalo Gravel Corp.* v. *Moore,* 201 App. Div. 242, 246; affd., 234 N. Y. 542.) In this case indictments had been found, and it was sought by means of equity to prevent their prosecution. One court will not thus interfere with another. There are, however, numerous instances where a statute or an ordinance of a criminal nature is such an unlawful interference with the rights of property that courts of equity will restrain its enforcement in order to prevent irreparable damage. (*Truax* v. *Raich,* 239 U. S. 33, 37; *Dobbins* v. *Los Angeles,* 195 U. S. 223, 241; *People* v. *Canal Board,* 55 N. Y. 390, 394.) In *Truax* v. *Raich* it was said: " It is also settled that while a court of equity, generally speaking, has no jurisdiction over the prosecution, the punishment or the pardon of crimes or misdemeanors ' (*In re Sawyer,* 124 U. S. 200, 210) a distinction obtains, and equitable jurisdiction exists to restrain criminal prosecutions under unconstitutional enactments, when the prevention of such prosecutions is essential to the safeguarding of rights of property." (See, also, *Hygrade Provision Co., Inc.,* v. *Sherman,* 266 U. S. 497.)

Where a municipal ordinance fixing the limits within which gas works might be erected, was subsequently changed by another ordinance after work had progressed under the first ordinance, equity interfered in *Dobbins* v. *Los Angeles,* to prevent the enforcement of the last ordinance. The court said: " It is also urged by the defendants in error that a court of equity will not enjoin prosecution of a criminal case; but, as we have seen, the plaintiff in error in this case had acquired property

rights which by the enforcement of the ordinances in question would be destroyed and rendered worthless. If the allegations of the bill be taken as true, she had the right to proceed with the prosecution of the work without interference by the city authorities in the form of arrest and prosecution of those in her employ.

" It is well settled that where property rights will be destroyed unlawful interference by criminal proceedings under a void law or ordinance may be reached and controlled by a decree of a court of equity."

In this case the plaintiff corporation had on hand a stock of jewelry which it desired to sell after sunset by public auction. Its purpose was interfered with by the act in question. It could not thus dispose of its property. The stock of merchandise might remain on its hands undisposed of, or else sold in other ways at much loss. The complaint alleges that it will suffer irreparable loss, and as this motion for judgment on the pleading is in the nature of a demurrer, the allegation stands admitted. We think this action was maintainable in equity.

Reference has been made to *People* v. *Gibbs* (186 Mich. 127) and *Hayes* v. *City of Appleton* (24 Wis. 542). We have not overlooked these authorities. The ordinance or statute therein involved pertained to the auction of all kinds and classes of goods. The decisions moreover may have rested upon local conditions not present in the large populous seaport city of New York. The conclusions reached by these courts we cannot adopt. The later case of *Maercker* v. *City of Milwaukee* (151 Wis. 324) must be read before considering the *Hayes* case.

The brief submitted in behalf of the parties appearing as *amici curiæ* states that about thirty-five of the largest cities in the United States have passed ordinances similar to the law here in question as applicable to auction sales of jewelry at night. We have not had the time or the opportunity to refer to these ordinances, but we assume that the statement would not be made by reputable

counsel unless the fact were so.　That other large cities have recognized a supposed evil in auction sales at night, and have passed ordinances to prevent them indicates an universal feeling that danger to the public is at least supposed to lurk in such sales and suggests that judges removed from the haste and excitement of the public mart where goods are sold under the hammer on the third and last chance should be slow, very slow, in declaring that no such evil exists.

For the reasons here stated the judgment appealed from should be affirmed, with costs.

CARDOZO, POUND, ANDREWS and LEHMAN, JJ., concur; HISCOCK, Ch. J., and McLAUGHLIN, J., absent.

Judgment affirmed.