MATHENY *v.* SIMMONS.

(Division B. Jan. 18, 1932.)

[139 So. 172. No. 29729.]

Holmes & Potter, of Jackson, for appellant.

W. E. Morse, of Jackson, for appellee.

Briefs of counsel not found.

Anderson, J., delivered the opinion of the court.

Appellant filed his bill in the chancery court of Hinds county against appellee, chief of police of the city of Jackson, to enjoin the latter from enforcing against him an ordinance of said city, adopting chapter 83 of the Code of 1930 (sections 3715-3721), regulating auction sales by jewelers, on the ground that the ordinance, and the statute of which the ordinance is a rescript, are violative of the due process and the equal protection clauses of the Fourteenth Amendment to the Federal Constitution. On the filing of the bill a temporary injunction was issued, restraining appellee from enforcing the ordinance. Appellee demurred to the bill, and made a motion to dissolve the temporary injunction on bill, demurrer and agreed facts. The motion to dissolve was sustained, and appellee awarded damages on the injunction bond

by way of attorney's fees in the sum of three hundred dollars. From that decree, appellant prosecutes this appeal.

The agreed facts are as follows: At the time of the filing of the bill, and at the time of the trial, appellee, John. Simmons, was chief of police of the city of Jackson. When the bill was filed, appellee turned the case over to W. E. Morse, Esq., attorney for the city of Jackson, and asked him to represent him in the litigation. Morse had been his attorney and counselor for several years. There was no definite agreement between appellee and Morse as to what fee the latter would charge for his services. It was agreed between the parties that the sum of three hundred dollars would be a reasonable attorney's fee for Morse's services to appellee in the chancery court.

With certain exceptions unnecessary to mention, because appellant does not come within any of such exceptions, chapter 83 of the Code of 1930 provides that it shall be unlawful for any person, firm, or corporation to sell, or offer to sell at auction any gold, silver, plated ware, clocks, watches, cut glass, chinaware, or jewelry, from the first day of April to the thirtieth day of September, both inclusive, between the hours of seven in the evening and seven the following morning; and from the first day of October to the thirty-first day of March, both inclusive, between the hours of five in the evening and eight the following morning. And each separate sale of any such article in violation of the statute is denounced as a misdemeanor, subject to a fine of not less than twenty-five dollars nor more than one hundred dollars.

When appellant filed his bill he was engaged in the jewelry business in the city of Jackson, and was auctioning off his stock within the hours prohibited by the statute. Appellee, as chief of police of the city, had arrested and prosecuted appellant for violating the ordi-

nance, and was threatening to continue to enforce the ordinance by further criminal prosecutions, should appellant continue to violate it.

Appellant contends that the right to auction off his stock of jewelry, whether done in the daytime or in the nighttime, is a common right, a property right, and therefore the ordinance taking the right away from him violated the due process provision of the State and Federal Constitutions (section 14 of the State Constitution, and the Fourteenth Amendment to the Federal Constitution) and also the equality clause of the Fourteenth Amendment to the Federal Constitution; because the ordinance is an unreasonable, arbitrary, and discriminatory classification of persons engaged in the jewelry business.

Several states have similar statutes, the constitutionality of which has been passed upon by their courts. Appellant concedes that the numerical weight of authority is in favor of the constitutionality of such statutes, but challenges the soundness of their reasoning.

The Supreme Court of Alabama, in Davidson v. Phelps, 214 Ala. 236, 107 So. 86, and the Supreme Court of Florida, in Levy v. Stone, 97 Fla. 458, 121 So. 565, 566, passed upon similar statutes, and in very clear and exhaustive opinions, reviewing the decisions of other states passing on like statutes, upheld their constitutionality. Those cases hold that such statutes are regulatory, and not prohibitive, and therefore do not violate due process; and that the classification of jewelers is not an arbitrary and discriminatory classification, and a denial of equality. We do not think we could do better than adopt and quote as the opinion of this court in the present case the following from the opinion of the Florida court:

"The police power may be exercised in appropriate cases (see People v. Beakes Dairy Co., 222 N. Y. 416, 119 N. E. 115. 118, 3 A. L. R. 1267) to protect the public against loss from fraudulent or unscrupulous practices

in commercial and financial transactions, particularly where the thing dealt with, or the method of dealing readily adapts itself to the perpetration upon the public of deception or fraudulent imposition. Holsman v. Thomas, 112 Ohio St. 397, 147 N. E. 750, 39 A. L. R. 760; Biddles v. Enright, 239 N. Y. 354, 146 N. E. 625, 39 A. L. R. 766. See, also, Goldstein v. Maloney, 62 Fla. 198, 57 So. 342.

"There is some diversity of opinion amongst the courts upon the validity of a municipal regulation limiting the conduct of auction sales of jewelry and the like to daylight hours. See Miller v. City of Greenville, 134 S. C. 314, 132 S. E. 591, 46 A. L. R. 155; Robinson v. Wood, 119 Misc. Rep. 299, 196 N. Y. S. 209; People v. Gibbs, 186 Mich. 127, 152 N. W. 1053, Ann. Cas. 1917B, 830. The substantial weight of authority, however, and in our opinion the better reasoning, supports the validity of such a regulation when confined to auction sales of the class of merchandise enumerated in the ordinance under consideration. Whether the same would be true with reference to other classes of merchandise is not now before us for consideration.

"The circumstances and incidents which accompany the sale at auction of the class of merchandise affected by the ordinance here under consideration are generally recognized as affording a reasonable basis of classification for the purpose of imposing upon such sales, in the exercise of the regulatory police power, the regulation here involved, even though the same regulation be not imposed upon auction sales of other commodities. The classification being reasonable and its operation uniform as to all persons who desire to sell at auction merchandise of the class here involved, the validity of the classification cannot be successfully assailed merely because its scope is not sufficiently broad to include all possible abuses of this general nature. Yee Bow v. Cleveland, 99

Ohio St. 269, 124 N. E. 132, 12 A. L. R. 1424. See, also, Noble v. State, 68 Fla. 1, 66 So. 153.

"It is a matter of common knowledge that in the sale of merchandise of the character affected by this ordinance the public is more readily deceived and becomes an easy prey to fraud, and that auction sales of such merchandise are therefore attended with greater risk to the public. Such sales afford peculiar opportunity to impose upon, defraud, and cheat the public, because the public generally is unskilled in the art of determining the purity, quality, and value of merchandise of this character, to determine which deliberate care and often scientific tests are necessary. It is further a matter of common knowledge that fraud and irreparable injury to the public are more likely to occur in auction sales of merchandise of the character here under consideration when the same are conducted after nightfall and by artificial light, and in the excitement of competitive bidding, when little or no opportunity is offered for careful inspection, than in the case of other classes of goods, or in the sale of the character of goods under consideration held during the daytime in the ordinary course of business. The rapid sale of such articles at public auction at night, when purchasers must buy at a glance under artificial lights and under the stimulus of competitive bidding, exposes many persons to deception and unscrupulous practices against which this character of regulation might protect them. Similar opportunities for practicing fraud and deception upon the public do not ordinarily attend auction sales of other commodities the quality and value of which are readily ascertainable by the ordinary person. The circumstances just stated, and others, furnish practical reasons for the imposition of regulations of this nature upon the sale at auction and at night of jewelry, precious stones, glassware, and the like, which reasons do not exist with respect to auction sales in other lines of business. The regulation in question therefore bears

a reasonable and practical relation to the object sought to be accomplished by it, namely, the prevention of fraud and deception upon the public.

"As was said in Biddles v. Enright, 239 N. Y. 354, 146 N. E. 625, 39 A. L. R. 766: 'In the examination of jewelry and precious stones, silks, fabrics, and the like, too much artificial light, or the nature of the artificial light, may be as deceiving as the candle or the lamp. The glare may be as obscuring as the darkness. Colors too, as we well know, may take on a different shade altogether, according to the quality or coloring of the light. Manipulations of the lights upon the stage have made it common knowledge that the eye may be readily mistaken as to the actual nature of the thing observed. . . . It is not enough to say that the business may be honestly conducted. The state may, to some extent, compel honesty by imposing a license fee if widespread frauds upon and losses by its people are thereby prevented.' Another reason advanced in the decision just mentioned is that such a regulation tends to prevent the gathering of a crowd at night in or about the streets or cities, where jewelry and precious articles are being sold and carried away by customers, thereby decreasing the possibility of violence and robbery, adding: 'To say that there is not more danger at night from the assembling of such crowds around the place where valuables are publicly distributed than there would be in the daytime is to ignore the fact that darkness has always been sought as a cover for crime.' Hyman v. Boldrick, 153 Ky. 77, 154 S. W. 369, 44 L. R. A. (N. S.) 1039.

"In the case of People v. Gibbs, supra, the ordinance under consideration contained elaborate provisions for safeguarding purchasers against fraud, which were apparently regarded by the court as sufficient to protect purchasers at night sales. The following cases support our view that the classification and the regulation here involved are reasonable and valid: Holsman v. Thomas,

112 Ohio St. 397, 147 N. E. 750, 39 A. L. R. 760; Biddles v. Enright, supra; Alexander v. Enright, 211 App. Div. 146, 206 N. Y. S. 785; Carlton v. Watertown, 124 Misc. Rep. 244, 207 N. Y. S. 339; Ex parte West, 75 Cal. App. 591, 243 P. 55; Roanoke v. Fisher, 137 Va. 75, 119 S. E. 259; Mogul v. Gaither, 142 Md. 380, 121 A. 32; State v. Bates, 101 Minn. 301, 112 N. W. 67; Davidson v. Phelps, 214 Ala. 236, 107 So. 86. See, also, the notes following Dornberg v. Spokane, 31 A. L. R. 295, and Miller v. Greenville, 46 A. L. R. 155, although the last stated cases take a contrary view of the question under consideration. 3 McQuillin Mun. Corp. (2 Ed.), sections 1062, 1077.

"While we do not necessarily subscribe without qualification to all that is said in the cases last above cited, we are in full accord with their reasoning and holding upon the particular regulation now under consideration."

The South Carolina case and the Michigan case, referred to in the opinion of the Florida court, are the two cases relied on by appellant as sustaining his contention. In the South Carolina case it was wholly unnecessary for the court to pass on the constitutionality of the ordinance, because the court held that there was no statute authorizing the adoption of the ordinance, and therefore it had no legal force. In other words, as we view it, the South Carolina court never reached the point where it was necessary to decide the constitutional question. As said by the Florida court in reviewing the Michigan case, the ordinance there under consideration contained elaborate provisions for safeguarding purchasers against frauds perpetrated on them at night auction sales of jewelry.

Appellant assigns and argues that the court erred in allowing appellee an attorney's fee of three hundred dollars as damages for wrongfully suing out the injunction, upon the ground that appellee's attorney, in defending the suit, was representing the city of Jackson, and that

he was compensated for such services by the salary he was receiving from the city.

The trouble about that contention is that, although the agreed facts show that Mr. Morse was attorney for the city of Jackson, they fail to show that, under his employment, it was his duty to defend this injunction suit against the chief of police; on the contrary, the agreed facts show that Mr. Morse was appellee's regular attorney, and expected to be remunerated in this case by appellee, and not by the city.

Affirmed.