LESLIE L. BLAUVELT ET AL., APPELLEES, v. CLARENCE S. BECK, ATTORNEY GENERAL OF THE STATE OF NEBRASKA, ET AL., APPELLANTS.

76 N. W. 2d 738

Filed May 4, 1956. No. 33954.

*Clarence S. Beck,* Attorney General, *Homer G. Hamilton, Elmer M. Scheele,* and *Edward F. Carter, Jr.,* for appellants.

*Albert S. Johnston* and *Thomas H. Adams,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The objective of this litigation is to secure an adjudication that the Nebraska Public Auction Law is constitutionally invalid and to enjoin appellants from taking any action intended to enforce the provisions of the law.

The substance of the petition is as follows:

Appellees Leslie L. Blauvelt, Mac Wondra, and Clifford E. Anderson, duly qualified and experienced auctioneers, are and each have been for many years engaged in conducting retail sales of personal property at public auction in a lawful manner in the State of Nebraska. The property sold by them at auction includes personal property of other persons consigned to appellees for sale and they are paid compensation for making a sale of it at auction. A part of the property sold consists of new merchandise not previously sold at retail and it is impossible to ascertain and know in many instances if the articles offered for sale and sold have or have not been previously sold at retail. Appellee C. C. Gannett & Co., Inc., is a domestic corporation and appellee Charles C. Gannett is one of its officers and stockholders. Appellee Prima Sales Co. is an association of persons engaged in business in Nebraska. C. C. Gannett & Co., Inc., and Prima Sales Co. are each engaged in buying and selling at retail personal property including merchandise not previously sold at retail. Their method consists of the sale of a part of the merchandise at pub-

lic auction. Their method of selling merchandise has been and is lawful and legitimate. Appellant Clarence S. Beck, the Attorney General of Nebraska, is authorized to act for the state in the enforcement of its laws and to prosecute violations of any of them. Appellant Elmer M. Scheele, county attorney for Lancaster County, is charged with the duty of enforcing the laws of the state and prosecuting violation of any of them that occur within the county.

The Legislature of Nebraska at its 1955 session enacted Legislative Bill 498 as the Nebraska Public Auction Law. It by its terms became in force and operative May 6, 1955. It contains conditions and restrictions that are discriminatory and unreasonable. It does not accord to appellees equal protection of the law in the conduct of their lawful business and it abridges the privileges and immunities of appellees and other persons similarly situated, contrary to the Constitution of the United States and the Constitution of Nebraska. The classifications of business made therein and thereby are discriminatory, the fees required to be paid thereby are confiscatory, and the fines imposed by it are excessive. The law in each of said respects is contrary to the Constitution of the United States and the Constitution of Nebraska.

The county attorney of Lancaster County, one of the appellants, filed a complaint in the county court of that county charging plaintiffs with the violation of the Nebraska Public Auction Law. Appellees Leslie L. Blauvelt and Charles C. Gannett were each arrested at the Lincoln Sale Barn, owned and operated by the former, while each of said persons was engaged in the lawful sale of merchandise consigned to them for auction sale by C. C. Gannett & Co., Inc. The action of the county attorney in that regard was the occasion of the commencement of this litigation. Appellants each threaten to continue to attempt to enforce the invalid law and to harrass appellees in the conduct of their business.

Appellants challenged the sufficiency of the petition by general demurrer. It was overruled and appellants elected not to plead further in the case. The district court found that the Nebraska Public Auction Law conflicts with the Constitution of Nebraska and the Constitution of the United States in the particulars alleged in the petition of appellees; that it was invalid; and that appellees were entitled to an injunction preventing appellants from attempting to enforce the provisions of the law. A judgment was rendered in harmony with the findings. This appeal contests the correctness of the judgment.

A general demurrer tests the substantive legal rights of the parties upon admitted facts including reasonable inferences of law and fact which may be deduced from the facts which are alleged. It does not admit conclusions alleged in the pleading to which the demurrer is directed. Central Nebraska Public Power & Irr. Dist. v. Walston, 140 Neb. 190, 299 N. W. 609; Kinney Loan & Finance Co. v. Sumner, 159 Neb. 57, 65 N. W. 2d 240; Montgomery v. Blazek, 161 Neb. 349, 73 N. W. 2d 402.

The petition is quite general in its averments of the basis for the claims of appellees that the statute is in conflict with the Constitution. The ability of appellees to contest the validity of the statute by virtue of their business status is not assailed by appellants. Appellees allege that they are threatened with its attempted and intended enforcement; that the legislation violates the fundamental law because it is discriminatory, unreasonable, and confiscatory; that the classification made by it is arbitrary and illegal; and that it denies appellees in the prosecution of their business equal protection of the law and denies them the privileges and immunities to which they are entitled. The petition is sufficient to the extent and in instances that appellees assert that the statute is invalid because it is in its substance, as shown by its language and effect, violative of the fundamental law. This doctrine was announced in this

jurisdiction many years ago and has not since been departed from. The statement of it in City of York v. Chicago, B. & Q. R. R. Co., 56 Neb. 572, 76 N. W. 1065, is as follows: "When it is claimed that a statute or ordinance is invalid because it is in its substance violative of the fundamental law, the inference of invalidity being one following from the fundamental law as compared with the act in question, it is sufficient to generally allege that it is invalid."

The statute designated the Nebraska Public Auction Law, the cause of this controversy, by its terms became effective May 6, 1955. Laws 1955, c. 266, p. 832; §§ 69-801 to 69-817, R. S. Supp., 1955. It will be herein referred to by its name or as the law. The often-repeated words in the law "new goods, wares, and merchandise" will be spoken of as merchandise. Public auction sale or sales will be mentioned as auction.

The following is the substance of the relevant portions of the law: It defines auction as offering for sale or selling merchandise to the highest bidder or offering for sale or selling merchandise at a high price and then offering it at successively lower prices until a buyer is secured. New goods, wares, and merchandise as used in the law refers to items of those classes not previously sold at retail. Established place of business is any building at which a legitimate, permanent business is carried on as such in good faith and at which stocks of the property being sold at auction are produced or kept in quantities reasonably adequate and usually kept for the requirements of such business. Applicant is any person, firm, or corporation making an application under the law for a license to conduct an auction.

The law makes it unlawful for any person to offer for sale or to sell at auction in the state merchandise unless such person shall have secured a license as provided by the law, except as otherwise provided therein. A license may be procured by an application in writing filed with the county clerk of the county in which an

auction is desired to be held not less than 10 days prior to the auction, containing: The name, residence, and post-office address of the applicant; if a firm or corporation, the names and address of the members of the firm or officers of the corporation and the date and place of incorporation; if a foreign corporation, the date it qualified as such to do business in Nebraska; the name, residence, and post-office address of the auctioneer who will conduct the auction; if the applicant is not the owner of the merchandise to be offered for sale, the name and address of the owner thereof; a detailed inventory and description of the merchandise to be offered for sale which shall set forth "the cost to the applicant of the several items" therein; a receipt for payment of personal property tax on the merchandise to be offered for sale or evidence satisfactory to the county clerk that it is not liable for taxation; a copy of notice which 10 days before the application has been filed shall have been mailed by registered mail by the seller to the State Tax Commissioner stating the precise time and place the auction will be held, the approximate value of the merchandise to be offered or sold, and any other information the State Tax Commissioner requests or requires; and the number of days the auction will be held.

A bond shall be filed and deposited with the county clerk as a part of and at the time the application is filed, with sureties to be approved by the clerk, in the sum of twice the value of the merchandise to be offered for sale, in which the state must be named as obligee, for the use and benefit of any purchaser of such merchandise at the auction who might have a cause of action of any nature resulting from a sale at the auction against the applicant. The bond must be conditioned for the payment of any tax due the state or any subdivision of it; the payment of any fines against the applicant for violations of the auction law; the satisfaction of any cause of action commenced within 1 year from the date of the sale and arising therefrom; and the pay-

ment by the applicant to the purchasers at the auction of any loss or damage caused any purchaser by breach of any express or implied warranty of the manufacturer, owner, or seller, including cost of servicing and repairs incurred by purchasers, unless the owner or seller of the merchandise shall state in public notices of the auction that the goods to be sold are not warranted or guaranteed in any manner and that the costs of servicing will have to be paid by the purchaser. The applicant and sureties shall in the bond appoint the county clerk their agent for the service of process. The county clerk shall within 5 days after the service of any process on him send a copy thereof by ordinary mail to the party for whom he has been served to his last-known address. "Failure to so mail said copy shall not, however, affect the court's jurisdiction."

An applicant for a license must file the receipt of the county treasurer for payment to him by the applicant of a license fee of $50 per day for the entire time he estimates he will conduct an auction. The license is not transferrable. It is valid only in the county where issued except it is not valid in any city or village which has an ordinance licensing auctions unless a license has also been obtained from the city or village, and a city or village license is not one in lieu of a county license. A license may be used for only one place in the county.

The applicant within 10 days of the termination of the auction is required to file in duplicate with the county clerk an inventory of all merchandise sold at the auction and the price received therefor and a copy of it must immediately be sent to the State Tax Commissioner. The provisions of the law do not apply to "public auctions of goods, wares, and merchandise held by the owner thereof at his * * * established place of business."

The law authorizes cities and villages to tax, license, and regulate persons who desire to engage or are engaging in auctions therein and to charge a fee therefor

not to exceed $50 per day and it shall be in addition to the license fee of $50 per day the law requires for a county license.

The law inflicts for each violation of it a fine of not less than $200 and not more than $1,000 or imprisonment in the county jail for not less than 30 days and not more than 180 days. Cities and villages are authorized to provide penalties for violation of any ordinance concerning auctions in force therein.

The selling of merchandise at auction and the occupation of auctioneer are legitimate, lawful, and useful. Caldwell v. City of Lincoln, 19 Neb. 569, 27 N. W. 647; Webber v. City of Scottsbluff, 141 Neb. 363, 3 N. W. 2d 635. The business of an auctioneer, notwithstanding it is perfectly lawful and useful, is affected with a public interest and is subject to reasonable legislative restriction. Riddles, Inc. v. Enright, 239 N. Y. 354, 146 N. E. 625, 39 A. L. R. 766; City of Chicago v. Ornstein, 323 Ill. 258, 154 N. E. 100, 52 A. L. R. 489; Annotation, 31 A. L. R. 299; 5 Am. Jur., Auctions, § 3, p. 447. The source of the authority to regulate auctions is the police power and a regulatory statute adopted by virtue of the police power must have relation to the public health, safety, and welfare. If the regulations imposed by the statute do not have such relation they are void as an invasion of the property rights of any person affected by their enforcement. Webber v. City of Scottsbluff, *supra.*

All persons are insulated against deprivation of life, liberty, or property without due process of law and discrimination between citizens in respect to the acquisition, ownership, possession, and enjoyment of property by constitutional prohibitions. Art. I, §§ 3, 25, Constitution of Nebraska. The federal Constitution safeguards the citizen from state legislation which abridges his privileges and immunities or denies him the equal protection of the laws or deprives him of liberty or property without due process. Art. XIV, § 1, Constitu-

tion of the United States. A controlling principle is that if legislative action is arbitrary and has no reasonable relation to a purpose which it is competent for government to effect, the Legislature transcends the limits of its power in interfering with the rights of persons affected by the legislation but if there is reasonable relation to an object within governmental authority, the exercise of the legislative discretion is not subject to judicial review. If there existed a condition of affairs concerning which the Legislature of the state, exercising its conceded right to enact laws for the protection of health, safety, or welfare of the people, might pass the law it must be sustained but if such action was arbitrary and an unreasonable interference with the right to carry on business and had no just relation to the protection of the public within the legislative power, the act must fail. Liberty is not absolute. It implies absence of arbitrary restraint but not immunity from reasonable regulations. McGraw Electric Co. v. Lewis & Smith Drug Co., Inc., 159 Neb. 703, 68 N. W. 2d 608. The reasonableness of restrictions imposed by the Legislature by the exercise of the police power is a judicial matter. The scope of judicial inquiry as to the validity of a statute is limited to the question of power to enact it. The inquiry in this case is not in reference to lack of authority of the Legislature. The problem is whether or not the Nebraska Public Auction Law places arbitrary and unreasonable limitations, regulations, and impositions on the conduct of a lawful business, whether or not it is class legislation, or whether or not it prohibits rather than regulates. Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388, 126 A. L. R. 729; Webber v. City of Scottsbluff, *supra*.

The following required matters—Notice to be given by the applicant for a license to conduct an auction to the State Tax Commissioner 20 days before the date of the commencement of the auction stating the precise time and place of the auction, the value of the merchandise to

be sold, and "such other information as the State Tax Commissioner may request or * * * require"; the verified, detailed inventory and description of the merchandise to be sold at the auction and "the cost to the applicant of the several items contained in such inventory" which must accompany the application for a license at least 10 days before the auction; the verified inventory in duplicate of all merchandise sold at the auction and the price received therefor which must be filed with the county clerk within 10 days of the last day of the auction; and the condition of the bond for the payment by the principal and surety of "damage occasioned to any purchaser by reason of the breach of any express or implied warranty of the manufacturer, owner, or seller, including costs of servicing and repairs incurred by purchasers within the warranty" unless the licensee gives public notice that the merchandise sold is not warranted or guaranteed, or any of them—have no such relation to public health, safety, or welfare as to justify the exercise of police power in reference to them as is attempted to be done in the statute in controversy in this action. If it is assumed that the regulatory provisions of the statute above outlined have some relation to public health, safety, or welfare it must nevertheless be said that they arbitrarily and unreasonably interfere with private business and impose unreasonable and unnecessary restrictions on auction sales and for that reason they may not be approved and upheld.

In Webber v. City of Scottsbluff, *supra*, the court said concerning provisions of an ordinance intended to regulate auction sales: "If ordinances under the police power do not bear some relation to the public health, safety or welfare, they are void as an invasion of the property rights of persons affected by their enforcement. * * * A regulatory provision of an ordinance having some relation to public health, safety or welfare, but which arbitrarily and unreasonably interferes with pri-

vate business and imposes unreasonable and unnecessary restrictions, may not be upheld." In the opinion it is said: "It is difficult, if not impossible, to find a basis for a conclusion that a 15-day notice to a city clerk before an auction sale, an inventory to the city clerk of all goods to be sold, containing the quality, quantity, kind and grade of the merchandise intended to be sold, * * * a requirement by ordinance that accurate records shall be kept, * * * or any of these restrictions, have any relation to public health, safety or welfare."

In McGraw Electric Co. v. Lewis & Smith Drug Co., Inc., *supra*, it is declared: "The question of whether or not legislation is in the public interest is ordinarily one for legislative determination, but the Legislature may not, under the guise of regulation in the public interest, impose conditions which are on their face unreasonable, arbitrary, discriminatory, or confiscatory." See, also, Jones v. City of Jackson, 195 Tenn. 329, 259 S. W. 2d 649; Sam's Loan Office, Inc. v. City of Beaumont (Tex. Comm. App.), 49 S. W. 2d 1089; Perry Trading Co. v. City of Tallahassee, 128 Fla. 424, 174 So. 854, 111 A. L. R. 463.

Appellants say that the requirements indicated above, except the one concerning the condition of the bond, have sufficient relation to public welfare to legally justify them because they are intended to assist in the imposition and collection of taxes and to prevent escape of property from taxation. This is a tenuous and undemonstrable argument. It is condemned by other provisions of the law. The applicant must file with his application for a license a receipt showing payment of taxes on the merchandise to be sold or satisfactory evidence that the merchandise is not liable for taxation. A condition of the bond is payment by applicant of any legal taxes due from him. Any additional requirements relative to taxation of the property or payment of taxes thereon would be clearly arbitrary and unreasonable.

It is an exaction of the law that an applicant for a license pay a license fee or tax of $50 per day for the entire estimated duration of the auction to the county treasurer of the county where the application is made and that he file the receipt therefor with his application. The license authorizing the conduct of an auction, when issued, is valid in only one place in the county and it is not valid in any city or village which has an ordinance "licensing public auction sales unless a license is also obtained from such city or village." The law expressly gives cities and villages power to tax, license, and regulate persons engaging in or who desire to engage in public auctions and the municipality may require a license and charge a fee therefor not in excess of $50 per day and "such fee shall be in addition to the amount" of the county license fee of $50 per day. "A city or village license shall not be in lieu of a county license." The practical effect of this is that if the statute is valid an auction may only be legally conducted by one who has secured a county license for a fee or tax of $50 per day and a license from the city or village at an additional cost of $50 per day, or a total outlay of $100 per day for the duration of the auction. He may also be subjected to exactly duplicate regulations as provided in the statute. It is permissible under the language of the statute for a municipality to adopt an ordinance containing substantially all of the terms of the statute. In appraising the validity and effect of the statute it is proper to examine and determine what may be required under it pursuant to the provisions of it. The inquiry is not confined to what has been done under the act in any particular instance but by what may be done under and by virtue of its authority. The constitutional validity of a law is tested by what may by its authority be done.

In Elliott v. Wille, on rehearing, 112 Neb. 86, 200 N. W. 347, the court said: "* * * in determining whether any particular legislation * * * is valid, it is proper to

examine and ascertain what may be done or accomplished under and pursuant to such statutory provisions."

This doctrine is expressed in Rowe v. Ray, 120 Neb. 118, 231 N. W. 689, 70 A. L. R. 1056, in this manner: "It may be said that this is not the situation presented by the facts in this case, but it must be remembered that the validity of the act does not depend upon what has been done, but upon what the act authorizes and by what may be accomplished under it." See, also, Montana Company v. St. Louis Mining & Milling Co., 152 U. S. 160, 14 S. Ct. 506; 30 L. Ed. 398; Burtch v. Zeuch, 200 Iowa 49, 202 N. W. 542, 39 A. L. R. 1349; Replogle v. Little Rock, 166 Ark. 617, 267 S. W. 353, 36 A. L. R. 1333; Abbott v. McNutt, 218 Cal. 225, 22 P. 2d 510, 89 A. L. R. 1109; 11 Am. Jur., Constitutional Law, § 102, p. 737. A statute that makes it possible for dual regulations to be imposed upon persons affected by it is arbitrary, unreasonable, and confiscatory.

The law makes it mandatory that the bond appoint the county clerk agent for making service of process issued in an action against the licensee and the surety jointly or severally in the county where the auction is held. The county clerk is admonished in one part of the act to send within 5 days by ordinary mail a copy of the process served to the person for whom the agent was served at the last-known address of the principal. In another sentence of the law it is provided: "Failure to so mail said copy shall not, however, affect the court's jurisdiction." The net result of this is that the law attempts to make it immaterial that the person sued has no actual notice or means of knowledge that he is subjected to the hazard of suit and final judgment and, of course, no opportunity to be heard in defense. The failure to send the copy of the process to him "shall not, however, affect the court's jurisdiction." This may have been intended to be an indirect admonition to the agent, who was not voluntarily selected, not to mail the copy. In any event it was not intended to inspire

the agent to promptness, diligence, and prudence in mailing the copy in such a manner that it would probably reach the person for whom the process was issued.

Legislation in this state concerning notice to a person by use of the postal service has generally required transmission of the notice by registered mail. See, § 25-1606, R. S. Supp., 1955; § 25-1226, R. S. Supp., 1955; § 27-1703, R. R. S. 1943; § 27-204, R. R. S. 1943. This is recognized and resorted to in the provision of the law involved in this case concerning the sending of the notice to the State Tax Commissioner of the time and place an auction is to be held. The manner of transmitting the notice in that instance is "shall have been mailed by registered mail by the proposed seller to the State Tax Commissioner." There is significance in the distinction made by the statute between the method of sending by registered mail to the State Tax Commissioner a mere notice of a nature that no liability could result or great harm be done if he did not receive it and the requirement for sending of notice of the service of process in an action in court by "ordinary mail" to a defendant against whom a final judgment would certainly be rendered unless a defense was made, which requirement is accompanied by an assurance to the agent that it is immaterial in result whether he does or does not mail the copy of the process to the defendant for whom it was issued.

A statute which authorizes the use of the postal service to notify a defendant that he has been sued in court is strictly construed and it must be specifically observed. The method of transmitting the notice must be one that is reasonably calculated to give the defendant notice of the pending action and an opportunity to be heard in defense. The fundamental requisite of due process of law is the opportunity to be heard. The right to be heard has little reality or value unless one is informed that the matter is pending and he can choose for himself whether to appear or default, acquiesce or

contest. There is no possible situation where it is not reasonably possible or practicable to give adequate warning to the principal in the bond that he has been sued. The agent designated for service of process has available in his office by mandate of the statute as part of the application for license with which the bond is filed the name, residence, and address of the defendant. Service on a defendant of the character selected and attempted by the statute involved in this case must contain a requirement that makes it reasonably probable and certain that the notice of service on the person designated will be communicated to the defendant. Anything less than this is not due process. The method stated in the statute is inadequate because it is not reasonably calculated that notice of the service will reach the person affected who could easily be informed by other means at hand and proof that it had been accomplished could be had and made of record. See, Herzoff v. Hommel, 120 Neb. 475, 233 N. W. 458; Rose v. Gisi, 139 Neb. 593, 298 N. W. 333; 72 C. J. S., Process, § 51, p. 1065. The statute in the respect discussed is arbitrary and unreasonable. A citizen may not be subjected to such an implicit hazard as a condition of being permitted to engage in lawful business.

Any person, firm, or corporation may not without compliance with the statute sell or offer for sale at public auction in the state any new merchandise except the statute does not apply to auction sales of livestock, auction sales by officers required by law, sales by receivers or assignees of property for the benefit of creditors, or public auctions of merchandise held by the owner at his established place of business. This law is not limited to auction sales of merchandise conducted by or for non-residents or itinerants. It applies to any person not specifically excepted from its operation. A responsible local citizen with every desirable qualification, of good character and reputation, who has been or is sensitive to the prompt and full performance of every

duty, obligation, or responsibility or an itinerant who may be equally desirable or less desirable who does not have an established place of business as characterized in the law cannot conduct an auction of merchandise without complying with and subjecting himself to the requirements and impositions thereof. However, any person, without regard to his defaults, irresponsibilities, irregularities, and disregard of duties and obligations who has an established place of business may conduct a continuous auction sale of any merchandise he has or which he procures without any regard to this law if the auction is held at his established place of business. This law has no application to him. So far as it is concerned he is a free agent.

Appellees question the classification made by the law. The doctrine is that the Legislature may for purposes of legislation make classifications but a classification to be valid must rest on some reason of public policy or some substantial difference of situation or circumstances that naturally suggests the justice or expediency of diverse legislation with regard to the subject classified. In Arrigo v. City of Lincoln, 154 Neb. 537, 48 N. W. 2d 643, it is said: "The Legislature may make a reasonable classification of persons, corporations, and property for purposes of legislation concerning them, but the classification must rest upon real differences in situation and circumstances surrounding the members of the class, relative to the subject of the legislation, which render appropriate its enactment; * * *." See, also, Ernesti v. City of Grand Island, 125 Neb. 688, 251 N. W. 899; Webber v. City of Scottsbluff, *supra;* Hagerman v. City of St. Louis, — Mo. —, 283 S. W. 2d 623.

The classification which the statute makes does not rest upon real differences in situation and circumstances surrounding the members of the class, relative to the subject of legislation which renders appropriate its enactment. The statute makes an arbitrary and un-

constitutional discrimination and classification. It is invalid.

The judgment of the district court should be and it is affirmed.

AFFIRMED.