No. 40,965

STATE OF KANSAS, *Appellant*, v. CONSUMERS WAREHOUSE MARKET, INC., *Appellee*.

(329 P. 2d 638)

Opinion filed September 8, 1958.

J. *John Marshall,* County Attorney, and *Charles N. Henson, Jr.,* Assistant Attorney General, argued the cause, and *John Anderson, Jr.,* Attorney General, and *Richard D. Loffswold,* Special Prosecutor, of Girard, were with them on the briefs for the appellant.

H. *Gordon Angwin,* of Pittsburg, argued the cause, and *Ben W. Weir,* of Pittsburg, was with him on the briefs for the appellee.

*Richard L. Becker* and *Morris D. Hildreth,* both of Coffeyville, as *amici curiae.*

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal from an order sustaining a motion to quash an information in a criminal action.

The prosecution, conceded to have been agreed upon between the county attorney and counsel for the defendant, was brought in the district court of Crawford County for the purpose of testing the constitutionality of the Kansas Unfair Practices Act, Chapter 277, Laws of 1941, now G. S. 1949, 50-401 to 408, incl.

In commencing the action the county attorney filed an information which, omitting formal allegations of no importance to the issues, reads:

"That on or about the 25th day of November, 1956, in the County of Crawford, and State of Kansas, defendant corporation above named, then and there being, did then and there unlawfully advertise, offer to sell and sell at retail

certain items of merchandise at less than cost to the retailer, as defined by G. S. 1949, 50-401, with the intent of defendant corporation to unfairly divert trade from a competitor and otherwise injure a competitor, impair and prevent fair competition and injure public welfare and as such is acting contrary to public policy and the policy of the above cited act.

"Contrary to the form of the Statutes in such cases made and provided, more particularly G. S. 1949, 50-401 *et seq.*, and against the peace and dignity of the State of Kansas."

The defendant promptly moved to quash the information on grounds:

"That said information does not state an offense against the laws of the State of Kansas for the reason that Sections 50-401, 402, 403, 404 and 405, G. S. 1949, under which said information is allegedly drawn, is unconstitutional and void and violates the Constitution of the State of Kansas and the amendments thereto, and the Constitution of the United States of America and the amendments thereto, and is in controvention of G. S. 1949, 62-1439."

When this motion was sustained by the trial court, under a general ruling which failed to give specific reasons for its action, the State, as the statute permits (G. S. 1949, 62-1703), perfected this appeal.

Portions of the Act in question, pertinent by reason of questions raised respecting the constitutionality of such enactment, on which the rights of the parties must stand or fall under the appellate issues involved, will be delineated at the outset.

G. S. 1949, 50-402, provides:

"It is hereby declared that any advertising, offer to sell, or sale of any merchandise, either by retailers or wholesalers, at less than cost as defined in this act, with the intent, of unfairly diverting trade from a competitor or otherwise injuring a competitor, impair and prevent fair competition, injure public welfare, are unfair competition and contrary to public policy and the policy of this act, where the result of such advertising, offer or sale is to tend to deceive any purchaser or prospective purchaser, or to substantially lessen competition, or to unreasonably restrain trade, or to tend to create a monopoly in any line of commerce."

G. S. 1949, 50-401, contains definitions of divers terms and provisions to be found in the Act. Cost is defined generally by subsections (*a*) and (*b*) of such section to mean invoice or replacement cost, whichever is lower, less all trade discounts except customary discounts for cash; plus freight charges, excise taxes, cartage and an allowance for markup to cover a proportionate part of the cost of doing business, fixed at six percent for retailers and two percent for wholesalers, absent proof of a lesser cost.

Subsection (*e*) of 50-401, *supra*, specifically provides:

"The term 'cost to the retailer' and 'cost to the wholesaler' as defined in paragraphs (a) and (b) of this section shall mean bona fide costs; and purchases made by retailers and wholesalers at prices which cannot be justified by prevailing market conditions within this state shall not be used in determining cost to the retailer and cost to the wholesaler."

G. S. 1949, 50-403, makes violation of the Act by either a retailer or wholesaler a misdemeanor and provides a penalty for such violation. In addition it contains the following provision:

". . . Proof of any such advertising, offer to sell or sale by any retailer or wholesaler in contravention of the policy of this act shall be prima facie evidence of a violation of this act."

The Act provides that its provisions shall not apply to certain sales, including, *inter alia,* sales at retail or wholesale,

". . .; (e) where the price of merchandise is made in good faith to meet the price of a competitor in the same locality; . . ." (50-405, *supra.*)

G. S. 1949, 50-407, specifies that if any section, sentence, clause or provisions of the Act shall for any reason be held invalid or unconstitutional, the validity of the remaining parts thereof shall not be affected thereby.

In passing it should perhaps be stated that, although not here involved, G. S. 1949, 50-404, authorizes proceedings in equity to prevent or restrain violations of the Act.

Appellee's first, and we may add its principal, contention is that our Unfair Practices Act is a price fixing statute and that, as such, it violates the due process guarantee of the Fourteenth Amendment to the Constitution of the United States and Section 18 of our Bill of Rights. In connection with its position on this point it argues that price fixing is permissible only with respect to commodities "affected with a public interest" and that since the Act purports to cover all items of merchandise it is an unconstitutional attempt to fix the price of some commodities which are not "affected with a public interest."

Notwithstanding, appellee's contention finds some support in some of the earlier decisions of the Supreme Court of the United States on which it relies, e. g., *Ribnik v. McBride,* 277 U. S. 350, 72 L. Ed. 913, 48 S. Ct. 545, and *Williams v. Standard Oil Co.,* 278 U. S. 235, 73 L. Ed. 287, 49 S. Ct. 115, we think it cannot now be upheld by reason of later decisions of that same tribunal which have given increasingly wider scope to the price fixing powers of the States and of Congress and now approve and uphold legislative power to regulate prices in adopting a policy for the promotion of

the general welfare. In short it is our view a negative answer to the question thus raised by appellee is required by more recent decisions of the Supreme Court of the United States. One of such decisions is *Nebbia v. New York*, 291 U. S. 502, 78 L. Ed. 940, 54 S. Ct. 505, where, in dealing with the subject, it is said and held:

"But we are told that because the law essays to control prices it denies due process. Notwithstanding the admitted power to correct existing economic ills by appropriate regulation of business, even though an indirect result may be a restriction of the freedom of contract or a modification of charges for services or the price of commodities, the appellant urges that direct fixation of prices is a type of regulation absolutely forbidden. His position is that the Fourteenth Amendment requires us to hold the challenged statute void for this reason alone. The argument runs that the public control of rates or prices is *per se* unreasonable and unconstitutional, save as applied to businesses affected with a public interest; that a business so affected is one in which property is devoted to an enterprise of a sort which the public itself might appropriately undertake, or one whose owner relies on a public grant or franchise for the right to conduct the business, or in which he is bound to serve all who apply; in short, such as is commonly called a public utility; or a business in its nature a monopoly . . ." (p. 531.)

"It is clear that there is no closed class or category of businesses affected with a public interest, and the function of courts in the application of the Fifth and Fourteenth Amendments is to determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discriminatory. *Wolff Packing Co. v. Industrial Court*, 262 U. S. 522, 535. The phrase 'affected with a public interest', can, in the nature of things, mean no more than that an industry, for adequate reason, is subject to control for the public good. In several of the decisions of this court wherein the expressions 'affected with a public interest,' and 'clothed with a public use,' have been brought forward as the criteria of the validity of price control, it has been admitted that they are not susceptible of definition and form an unsatisfactory test of the constitutionality of legislation directed at business practices or prices. These decisions must rest finally, upon the basis that the requirements of due process were not met because the laws were found arbitrary in their operation and effect. But there can be no doubt that upon proper occasion and by appropriate measures the state may regulate a business in any of its aspects, including the prices to be charged for the products or commodities it sells.

"So far as the requirements of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose. The courts are without authority either to declare such policy, or, when it is declared by the legislature, to override it. If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court *functus officio*. 'Whether the free operation of the normal

laws of competition is a wise and wholesome rule for trade and commerce is an economic question which this court need not consider or determine.' *Northern Securities Co. v. United States,* 193 U. S. 197, 337-8. And it is equally clear that if the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts to determine that the rule is unwise. With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal. The course of decision in this court exhibits a firm adherence to these principles. Times without number we have said that the legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power." (pp. 536, 537, 538.)

". . . The Constitution does not secure to anyone liberty to conduct his business in such fashion as to inflict injury upon the public at large, or upon any substantial group of people. Price control, like any other form of regulation, is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty." (pp. 538, 539.)

For a more recent and equally far reaching decision wherein the highest court of the land definitely adheres to the test of valid regulation enunciated in *Nebbia v. New York,* supra; indicates its approval of price fixing enactments such as are here involved; expressly disapproves *Ribnik v. McBride,* supra; and indicates disapproval of *Williams v. Standard Oil Co.,* supra, see what is stated and held by such court at pages 244 to 247, incl., of its opinion in the case of *Olsen v. Nebraska,* 313 U. S. 236, 85 L. Ed. 1305, 61 S. Ct. 862.

The decisions to which we have just referred make it clear the test of valid price regulation is not whether a specific commodity or industry is affected with a public interest but rather whether the problem is one which is subject to control for the public good or welfare. If so it is within the scope of the police power. Thus, if promotion of fair competition in the sale of goods and merchandise is a legitimate public purpose it cannot be successfully argued that legislation is unconstitutional merely because it regulates the sale of all such commodities. For further indication that regulation involving the price of all commodities is permissible under the Fourteenth Amendment see *Central Lumber Co. v. South Dakota,* 226 U. S. 157, 57 L. Ed. 164, 33 S. Ct. 66.

Under the rule of *Nebbia v. New York,* supra, as well as *Olsen v.*

*Nebraska,* supra, it is, of course, necessary that this court determine whether the policy of the Unfair Practices Act is one which the legislature has a right to adopt. In other words, whether the object of such Act is one for which the police power may legitimately be invoked. Let us see.

There can be no doubt the purpose of the Act, stated in a general way, is to safeguard the public against the creation of monopolies and to foster and encourage competition by the prohibition of unfair practices. Nor can it be denied these objects have long been held to be subject to legislative power, regulation and control.

This court has repeatedly held that the police power of the state extends not only to the protection of the public health, safety and morals, but also to the preservation and promotion of the public welfare. (*Carolene Products Co. v. Mohler,* 152 Kan. 2, 102 P. 2d 1044; *Limpp v. Dodge,* 146 Kan. 948, 73 P. 2d 1001; *Ware v. City of Wichita,* 113 Kan. 153, 214 Pac. 99; *The State v. Wilson,* 101 Kan. 789, 168 Pac. 679.) In fact in the Wilson case, in a statement which is repeated verbatim in each of the three other cases last above cited, we said:

"The assumption that the police power extends only to the protection of the health, safety and morals of the public, which was at one time quite general, is now out of date. The modern view is that the state may control the conduct of individuals by any regulation which upon reasonable grounds can be regarded as adapted to promoting the common welfare, convenience, or prosperity. (6 R. C. L. 203, 204.)" (pp. 794, 795.)

The decisions to which we have heretofore referred make it clear the police power may be invoked to promote the general welfare and prosperity by regulation of economic conditions. Moreover, the same decisions definitely establish that the prevention of monopolies, the fostering of competition, and the prohibition of unfair competition may reasonably be said to promote the general welfare, and that courts are neither concerned nor should they interfere with legislative determination to that effect. Therefore we are constrained to hold the purpose of the Unfair Practices Act is within the police power of the state.

Notwithstanding the conclusion just announced, there still remains for determination whether the means chosen by the legislature are reasonably designed to accomplish the purpose of the Act, *i. e.,* are its terms arbitrary, discriminatory, or demonstrably irrelevant to the legislative policy? This is the test of due process in the exercise of police power announced in *Nebbia v. New York,*

supra, which, it is to be noted, is in conformity with our decision in *Schaake v. Dolley*, 85 Kan. 598, 118 Pac. 80, where it is said:

"When once a subject is found to be within the scope of the state's police power the only limitations upon the exercise of the power are that regulations must have reference in fact to the welfare of society and must be fairly designed to protect the public against evils which might otherwise occur. Within these limits the legislature is the sole judge of the nature and extent of the measures necessary to accomplish its purpose . . ." (p. 605.)

When the relevancy of the provisions of an Act to its legislative purpose is drawn in question the judgment of the legislature cannot be superseded by that of the court if questions relating thereto are reasonably debatable. (*State, ex rel., v. Sage Stores Co.*, 157 Kan. 404, 413, 141 P. 2d 655, and cases therein cited.) We think the legislature might reasonably have believed that sales below cost, as defined by the terms of the Act tended to injuriously affect fair competition and to encourage monopoly and for that reason should be curbed. In addition we believe it had a right to and did reasonably assume that the proscriptions of the Act would result in substantial curtailment and prevention of practices of that nature. Under such circumstances questions relating to relevancy of the provisions of the Act are so obvious as to be scarcely debatable. In any event, it cannot be said that, considered in their entirety, the legislative means chosen to accomplish the purpose of the Act are so unreasonable as to violate the heretofore mentioned test of due process.

In passing it is to be noted that the conclusions heretofore announced are not based on any decisions of this jurisdiction which can be regarded as controlling precedents. This, it should be pointed out, is due to the fact that, since its enactment, only two cases (*State, ex rel., v. Commercial Candy Co.*, 166 Kan. 432, 201 P. 2d 1034; *State, ex rel., v. Fleming Co.*, 164 Kan. 723, 192 P. 2d 207) involving the Kansas Unfair Practices Act have reached this court and that in their disposition it was neither necessary nor required that we determine questions relating to its constitutionality. However, it can be stated, the views here expressed with respect to the foregoing conclusions are in accord with, and supported by, those of the great majority of the courts of other states which have passed on the constitutionality of Unfair Practices Acts similar to the one here involved. See, e. g., *State of Arizona v. Walgreen Drug Co.*, 57 Ariz. 308, 113 P. 2d 650; *Wholesale T. Dealers v. National Etc. Co.*, 11 Cal. 2d 634, 82 P. 2d 3; *Carroll v. Schwartz*, 127 Conn.

126, 14 Atl. 2d. 754; *Moore v. Northern Ky. Ind. Food Dealers Ass'n,* 286 Ky. 24, 149 S. W. 2d 755; *McElhone v. Geror,* 207 Minn. 580, 292 N. W. 414; *Associated Merchants v. Ormesher,* 107 Mont. 530, 86 P. 2d 1031; *State v. Sears,* 4 Wash. 2d. 200, 103 P. 2d 337; *Rust et al. v. Griggs,* 172 Tenn. 565, 113 S. W. 2d 733; *State v. Langley,* 53 Wyo. 332, 84 P. 2d 767; *Louisiana Wholesale Distributors Ass'n v. Rosenzweig,* 214 La. 2, 36 So. 2d 403; *Adwon v. Oklahoma Retail Grocers Ass'n, Inc.,* 204 Okla. 199, 228 P. 2d 376; *Hill v. Kusy,* 150 Nebr. 653, 35 N. W. 2d 594.

Appellee attacks the entire Act on the ground provisions of G. S. 1949, 50-405 (*e*), exempting sales at retail or wholesale "where the price of merchandise is made in good faith to meet the price of a competitor in the same locality," defeat the avowed purpose of promotion of the general welfare and make such Act one of pure price fixing. We are unable to agree with either of the conclusions reached by appellee on this point. The challenged provision merely authorizes the meeting of a competitor's price in good faith. Merchants who merely meet the price of a competitor are not engaged in a program of unfairly eliminating competition or in a practice tending to create a monopoly in any line of commerce. In our opinion, what has been heretofore stated and held discloses that inclusion of this exemption in the provisions of 50-405, *supra,* was well within the prerogative of the legislature and we so hold.

Another contention advanced by appellee is that the Act is arbitrary, unreasonable and discriminatory because, in defining costs, G. S. 1949, 50-401 (*a*) and (*b*) sets a standard markup of six percent for retailers and two percent for wholesalers as the cost of doing business, in the absence of proof of lesser costs. The principal argument made on this point is that there are many lines of merchandise which are normally sold at a greater markup than the standards specified, hence the Act affords no protection from unfair competition by sales below actual cost in such lines of merchandise. Assuming the truth of this argument, it is directed merely against the wisdom of the legislature in selecting the area of competition to be afforded the highest degree of protection under the terms of the Act. We are unwilling to say that it was unreasonable or arbitrary for that body to conclude that the greatest danger to fair competition existed through price cutting in the high turnover, low markup businesses, where a slight margin separated profit from disaster, and that such businesses were most in need of statutory

protection. The fact the Act is uniform in its application to all businesses, coming within the scope of its terms, demonstrates that it is not discriminatory. Moreover, the legislature is not required to cover all evils of like character in a single Act. (*State, ex rel., v. Sage Stores Co.,* p. 414, supra, and cases there cited.)

That portion of the provisions of 50-403, *supra,* making proof of advertising, offering for sale or selling items of merchandise in contravention of the policy of the Act prima facie evidence of a violation of the Act, is challenged on the ground it is an unconstitutional attempt to cast the burden of proving innocence on the appellee. In approaching the point it must be remembered this case is here on appeal from an order sustaining a motion to quash the information. Resort to the information discloses that it charges appellee with advertising, offering for sale and selling certain items of merchandise below cost as defined by the Act, contrary to its policy and *with intent* to unfairly divert trade, otherwise injure a competitor, impair and prevent fair competition and injure the public welfare, thus properly alleging every necessary element of the offense prohibited by the terms of the Act. Our decisions (*The State v. Saindon,* 117 Kan. 122, 230 Pac. 301), as well as those of other courts (See 42 C. J. S., Indictments and Informations, p. 1210 § 214), hold that a motion to quash only reaches some defect apparent on the face of the information and that all facts therein stated must be accepted as true. Other courts' have held that the prima facie evidence provision in question is a legislative rule of evidence and does not come into play before a trial on the merits of a case in which the presumption is actually relied upon by the state in proving the offense charged. (See *Carroll v. Schwartz,* supra; *Blum v. Engelman,* 190 Md. 109, 57 Atl. 2d 421.) We agree. Therefore, under our well-established decisions (*State, ex rel., v. School District,* 163 Kan. 650, 185 P. 2d 677; *Missionary Baptist Convention v. Wimberly Chapel Baptist Church,* 170 Kan. 684, 688, 228 P. 2d 540; *State, ex rel., v. Board of County Comm'rs,* 172 Kan. 601, 242 P. 2d 527; *Marks v. Frantz,* 179 Kan. 638, 643, 298 P. 2d 316) holding that this court will not consider the constitutionality of a statute in any particular not necessarily involved to a decision, we express no opinion on the constitutional validity of the above mentioned portion of the Act.

Finally appellee contends a portion of G. S. 1949, 50-401(*e*) is unconstitutional. The particular portion of the section thus chal-

lenged has been previously quoted but should be here requoted. It reads:

". . .; and purchases made by retailers and wholesalers at prices which cannot be justified by prevailing market conditions within this state shall not be used in determining cost to the retailer and cost to the wholesaler."

Specifically, it is claimed the above provision is so indefinite and uncertain that it is unreasonable and arbitrary and therefore unenforceable. Strangely enough, a review of the numerous decisions upholding Acts similar to the one here involved discloses few cases in which the question thus raised has been squarely presented and passed upon. However, our research discloses two cases (*State of Arizona v. Walgreen Drug Co.*, 57 Ariz. 308, 113 P. 2d 650; *McIntire v. Borofsky*, 95 N. H. 174, 59 Atl. 2d 471) where that has been done and this particular provision found to be invalid.

The difficulty with the provision now under consideration is that it applies to all merchants who would seek to avoid violation of the Act and forces them to determine the prevailing market conditions within the state to be used as a basis for computing cost in final determination of the price which they may legally charge. Once a merchant has completed his determination he may be held for violation of the Act if the trier of fact disagrees with his determination of prevailing market conditions. This, we may add, is true even though it is entirely possible his judgment as to such conditions may be more accurate and based on a far sounder premise than that of a competitor or the trier of fact. No standards are set for determining prices justified by prevailing market conditions within the state, although such prices are not ordinarily susceptible of consistent, accurate determination. It is equally possible that prevailing market conditions may be greatly different in divers localities of the state. In that situation, the merchant is required to guess and speculate as to what price he is entitled to use in his determination of costs under the requirements of such provision. Even then, in the exercise of utmost good faith on his part and like action by his competitors, it may be found that their respective conclusions on the subject are far apart, thus resulting in inequality of prices even in the same locality. At the same time, the fact that he has acted in good faith and exercised his honest judgment in determining his price is justified by prevailing market conditions may make him a violator of the law notwithstanding. For all these reasons, and others set forth in *State of Arizona v. Walgreen Drug Co.*, supra,

and *McIntire v. Borofsky,* supra, which we believe are sound in principle and should be regarded as controlling precedents, we hold that the provision above quoted is so indefinite and uncertain as to be arbitrary and unreasonable and is therefore invalid.

Our Unfair Practices Act contains a separability clause (G. S. 1949, 50-407) and the provision just held to be invalid is not necessary to the remainder of such enactment. Therefore we hold the invalid provision is separable and does not affect the remainder of the Act, which is held to be valid and in full force and effect.

We find nothing in other contentions advanced by appellee, all of which have been considered, to warrant or permit conclusions different from those heretofore announced respecting the constitutionality of the Act.

In conclusion it should be stated that, since the information charged the appellee with sales at less than cost "as defined by G. S. 1949, 50-401," and this charge included the portion of 50-405 (*e*), *supra,* hereinabove held to be invalid, the trial court's action in sustaining the motion to quash the information in that form was proper and must be upheld.

The judgment is affirmed.